# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| EDWIN ANDRES PADILLA-UGSHA, | ) |
| Petitioner, | ) |
| v. | ) No. 2:25-cv-03045-TLP-cgc |
| SCOTT LADWIG, | ) |
| Respondent. | ) |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Edwin Andres Padilla Ugsha, an alien detained in the West Tennessee Detention Facility in Mason, Tennessee, petitioned for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 8.) On November 18, 2025, the Court entered an Order directing Respondent to show cause why the Writ should not be granted and indicating that the Court would hold a hearing on the Petition. (ECF No. 9.) Respondent has responded to the Show Cause Order (ECF No. 11), and Petitioner replied. (ECF No. 12.) Petitioner moved to enforce the class declaration and partial summary judgment in *Maldonado Bautista et al. v. Santacruz Jr. et al.* (ECF No. 17.) Respondent responded to Petitioner's Motion (ECF No. 20.), and Petitioner replied. (ECF No. 21.) The Parties each supplemented their briefing twice. (ECF Nos. 23–26.) The Court held hearings on the Petition on December 1 and 11, 2025. (ECF Nos. 18, 27.) After hearing both Petitioner and Respondent's arguments, the Court took the matter under advisement. (*Id.*)

For the reasons stated below, the Petition is **GRANTED**.

**BACKGROUND**

Petitioner, an Ecuadorian citizen, has been living in the United States since September 15, 2024, without lawful status. (ECF No. 11 at PageID 33; ECF No. 12 at PageID 69–70.) He has a wife and a child, who is a U.S. citizen. (ECF No. 11 at PageID 34.)

Federal law enforcement arrested Petitioner when he crossed the border. (*Id.* at PageID 33.) Immigration authorities transported him to the Yuma, Arizona Border Patrol Station. (*Id.*) At the station, authorities processed him and issued him a Notice to Appear, requiring him to appear before an immigration judge on August 10, 2026. (*Id.*) Authorities released Petitioner on his own recognizance on September 14, 2024, and placed him in the Alternative to Detention ("ATD") program. (*Id.*) The ATD program required Petitioner to comply with biometric check-ins, office visits, and GPS location monitoring. (*See* ECF Nos. 11-4, 23.) Petitioner has resided in Memphis, Tennessee, since that time, and he applied for asylum on January 27, 2025. (ECF No. 12 at PageID 69.)

On October 30, 2025, ICE officers arrested Petitioner for allegedly violating the terms of the ATD program. (ECF No. 11-6 at PageID 64.) He remains in ICE custody at the West Tennessee Detention Facility in Mason, Tennessee. (ECF No. 11 at PageID 34.)

The Department of Homeland Security ("DHS") has not held a bond hearing for Petitioner. (ECF No. 8 at PageID 26.) Based on a new policy, it determined that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (ECF No. 12 at PageID 69–70.) In July 2025, DHS, the Department of Justice ("DOJ"), and ICE issued the new policy on the detention of noncitizens.[1] The new policy subjects noncitizens who have resided in the United States for a

---

[1] American Immigration Lawyers Association, *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-

long time and who are apprehended in the interior of the country to mandatory detention. In the past, they would be afforded bond hearings under 8 U.S.C. § 1226(a). Before this policy change, these noncitizens were not considered "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A). *Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, 2025 WL 3047889, at *3 (W.D. Tenn. Oct. 31, 2025). They were instead detained under § 1226(a) and entitled to a bond hearing. *Id.* The Board of Immigration Appeals ("BIA") later upheld this new policy in the case of *In re Matter of Yajure Hurtado*. 29 I. & N. Dec. 216 (BIA 2025). And so immigration judges are now bound by precedent which denies noncitizens bond hearings under § 1225(b)(2)(A), even though those same noncitizens would have been eligible for a bond hearing under § 1226(a).

      Petitioner, who has resided in the United States for over a year with a wife and child who is a U.S. citizen, now faces the prospect of extended detention in ICE custody. Petitioner asserts that the failure to provide him with a bond hearing violates 8 U.S.C. § 1226(a), his Fifth Amendment right to procedural due process, and his Fourth Amendment right to be free from unreasonable seizure. He asks the Court to grant his Petition and to order a bond hearing, his immediate release from custody, and attorney's fees and costs under the Equal Access to Justice Act. (ECF No. 8 at PageID 27; ECF No. 12 at PageID 84; ECF No. 17 at PageID 95; ECF No. 21 at PageID 128; ECF No. 24 at PageID 140; ECF No. 26 at PageID 151.)

---

for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.") (last visited Dec. 15, 2025).

## **LEGAL STANDARD**

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).

Two sections of the Immigration and Nationality Act of 1952 ("INA") primarily govern the detention of noncitizens during removal proceedings. *See* 8 U.S.C. §§ 1225, 1226. The Supreme Court has already distinguished these two provisions in *Jenings v. Rodriguez*. *See* 583 U.S. 281, 289 (2018). The *Jennings* Court determined that the government may "detain certain aliens seeking admission into the country" under § 1225(b) while § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* (emphasis added). Relevant here, § 1225(b)(2)(A) governs mandatory detention of applicants for admission after an immigration officer has determined that they will not be entitled to admission.

> (b) Inspection of applicants for admission
> . . .
> (2) Inspection of other aliens
>   (A) In general
>     Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1226(a) provides for discretionary detention. 8 U.S.C. § 1226(a).

>   (a)   Arrest, detention, and release
>   On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>   (1)   may continue to detain the arrested alien; and
>   (2)   may release the alien on—
>      (A)   bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
>      . . .

8 U.S.C. § 1226(a).  Known as the Laken Riley Act, subsection (c) of § 1226, provides for mandatory detention of noncitizens found inadmissible or deportable under certain provisions and who have been "charged with," "arrested for," "convicted of," or admit "having committed" certain listed crimes.  8 U.S.C. § 1226(c).  "[N]oncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an Immigration Judge."  *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

## ANALYSIS

Petitioner makes many arguments to challenge his detention and to assert his right to a bond hearing.  (ECF No. 12 at PageID 70–83.)  First, he argues that the Court should not order him to exhaust his administrative remedies because doing so would be futile and the BIA cannot review constitutional challenges.  (*Id.* at PageID 70–71.)

He next argues that § 1225(b)(2)(A) does not apply to him and that § 1226(a) does for several reasons.  (*Id.* at PageID 72–79.)  He asserts that the Respondent's interpretation of § 1225(b)(2)(A) ignores the words "seeking admission" which are in the present progressive tense, suggesting active conduct.  (*Id.* at PageID 72–73.)  He then argues that Respondent's interpretation ignores the subject matter of § 1225, which deals with immigrants actively

crossing the border or in a port of entry, and that a broad reading of "applicants for admission" renders § 1226(a) superfluous. (*Id.* at PageID 73–74.)

Petitioner continues by asserting that the BIA's decision in *In re Matter of Yajure Hurtado* was wrongly decided. And the Supreme Court's decision in *Loper Bright* requires the Court to come to its own independent interpretation of the statutory framework without deference to the BIA. (*Id.* at PageID 75–76.) Petitioner argues that the titles of the provisions support his interpretation of the statutory framework. (*Id.* at PageID 76–77.) He also asserts that the regulations promulgated under the INA envision bond hearings for noncitizens detained under § 1226. (*Id.* at PageID 77.)

Petitioner makes a constitutional avoidance argument, asserting that his interpretation of the INA eliminates any potential constitutional concerns with indefinite detention of noncitizens. (*Id.*) Petitioner claims that Respondent's interpretation "would subject millions of EWIs to mandatory detention without bond regardless of how long they have resided in the United States, their family ties, their community connections, or their lack of flight risk or danger" and that "[t]his sweeping result is incompatible with the INA's carefully calibrated detention framework . . . ." (*Id.*) Finally, Petitioner argues that his situation is like the petitioner in *Godinez-Lopez* and that the reasoning in that decision is persuasive here. (*Id.*)

In addition, Petitioner makes a procedural due process argument. (*Id.* at PageID 79–82.) He argues that the "entry fiction" from the *DHS v. Thuraissigiam* decision does not apply here. (*Id.* at PageID 79–80.) He claims that prolonged mandatory detention requires constitutional safeguards. (*Id.* at PageID 80–81.) And he argues that the failure of Respondent to provide him with a bond hearing deprives him of his liberty without sufficient process under *Matthews v. Eldridge*. (*Id.* at PageID 81–82.) (citing *Matthews v. Eldrige*, 424 U.S. 319 (1979)).)

Finally, Petitioner argues that his detention without a bond hearing violates his Fourth Amendment right against unreasonable seizures. He adds that the Fourth Amendment applies to civil immigration detention and his prolonged detention without a bond hearing is unreasonable. (*Id.* at PageID 82.)

Respondent counters that the Court should require Petitioner to exhaust administrative remedies before seeking relief from the federal judiciary. Respondent claims that the Sixth Circuit typically requires exhaustion, and it furthers judicial economy and efficiency by limiting the number of habeas petitions in federal court. (ECF No. 11 at PageID 35–37.)

Respondent next provides three arguments supporting its interpretation of the INA: "(1) § 1225's text controls; (2) other districts have adopted the Respondent's position; and (3) § 1225 is not ambiguous." (*Id.* at PageID 37.) The thrust of Respondent's interpretation tracks the BIA's recent opinion in *In re Matter of Yajure Hurtado*. Respondent asserts that an "applicant for admission" is any unadmitted noncitizen in the United States. And since Petitioner is an applicant for admission, he is necessarily seeking admission. As a result, says Respondent, Petitioner is properly detained under § 1225(b)(2)(A) pending further removal proceedings under § 1229a. (*Id.* at PageID 37–46.)

According to Respondent, the INA recognizes only two classes of unadmitted noncitizens that are not seeking admission: (1) "someone who withdraws his application for admission and 'depart[s] immediately from the United States'" and (2) "someone who agrees to voluntarily depart 'in lieu of being subject to proceedings under § 1229a . . . or prior to the completion of such proceedings.'." (*Id.* at PageID 38–39.) And this reading of § 1225 aligns with the policy goal of avoiding rewarding noncitizens that evade examination upon entry into the country. (*See id.* at PageID 44–45.) Respondent distinguishes between Petitioner and the petitioner in

7

*Godinez-Lopez* asserting that Petitioner has been in the United States for a shorter period. (*Id.* at PageID 39–40.)

Respondent also argues that detaining Petitioner under § 1225 does not violate procedural due process. (*Id.* at PageID 60.) Respondent claims that Petitioner is properly detained under § 1225. Respondent adds that mandatory detention under § 1225 does not violate due process because courts have held that detention during removal proceedings does not violate due process. (*Id.* at 46–50.)

The parties cite recent cases addressing the very issue before this Court. Having reviewed many of these cases, this Court is persuaded by the reasoning in *Godinez-Lopez v. Ladwig et al.* and *Maldonado Bautista et al. v. Santacruz Jr. et al. See* No. 2:25- CV-02962, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025); No. 5:25-cv-01873, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025).[2] For the reasons stated below, the Court finds that § 1226(a) is the appropriate statute under which Petitioner should be considered detained and that he is entitled to a bond hearing. The Petition therefore is **GRANTED**.

I.  **Administrative Exhaustion**

The Parties agree that administrative exhaustion is not statutorily required here but disagree on whether the Court should apply the doctrine of prudential exhaustion. (*Compare* ECF No. 11 at PageID 35–37, *with* ECF No. 12 at PageID 70–71.) The Court agrees that Congress has not explicitly mandated exhaustion in this context. Where Congress has not

---

[2] "By recent count, the central issue in this case . . . has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States." *Barco Mercado v. Francis*, 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (describing the results in cases addressing the same issue as here).

                              PageID 162

explicitly spoken, requiring the exhaustion of administrative remedies lies within "sound judicial discretion." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). In exercising that discretion, the Supreme Court has stated that "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146. Those institutional interests are "protecting administrative agency authority and promoting judicial efficiency." *Id.* at 145.

The *McCarthy* Court also identified situations in which the interest of the individual weighs heavily against the institutional interests. *See id.* at 146–49. Relevant here, "an administrative remedy may be inadequate where the administrative body . . . has otherwise predetermined the issue before it." *Id.* at 148 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1156–1157 (1979) (bias of Federal Trade Commission chairman), *cert. denied*, 447 U.S. 921 (1980); *Patsy v. Florida International University*, 634 F.2d 900, 912–913 (5th Cir. 1981) (en banc) (administrative procedures must "not be used to harass or otherwise discourage those with legitimate claims"), *rev'd on other grounds*, *sub nom. Patsy v. Board of Regents of Florida*, 457 U.S. 496 (1982)); *See also Herr v. U.S. Forest Serv.*, 803 F.3d 822–23 (6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway.") (internal quotations omitted).

The Court agrees with Petitioner that the BIA's decision in *Matter of Yajure Hurtado*, which is binding on immigration judges, makes exhausting administrative remedies futile here. To exhaust his remedies here, Petitioner would appeal to the same BIA. So the decision on whether to provide Petitioner with a bond hearing has been predetermined. Further, the BIA cannot review constitutional challenges, and therefore, Petitioner can only have his due process claim reviewed in federal court. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Requiring exhaustion, in this case, would not further the ends of judicial efficiency and protecting administrative authority because it would simply delay the resolution of Petitioner's legal questions. Petitioner's individual interest in having prompt access to this forum outweighs any institutional interests at stake. The Court therefore declines to require Petitioner to exhaust administrative remedies and next considers the merits of Petitioner's legal questions.

## II.     Statutory Interpretation

### a.  Interpretation of the Plain Text

Courts should construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Each word within the statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010, (2017); *Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 356 (2013)). And courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). And "[b]arring

unusual cases, '[s]tatutory definitions control the meaning of statutory words.'" *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3289861, at *8 (C.D. Cal. Nov. 20, 2025) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)).

The Parties disagree over whether § 1225(b)(2)(A) or § 1226(a) should govern Petitioner's detention. For starters, as the *Maldonado Bautista* court reasoned, the plain text of the statutory definition of "applicants for admission" does not support its application to Petitioner. *See id.* at *8–9. As noted above an "applicant for admission" is defined in § 1225(a)(1) as "[a]n alien present in the United States who has not been admitted . . . ," and "admitted" is defined in § 1101(a)(13)(A) as noncitizens who have not "lawful[ly entered] into the United States *after inspection and authorization by an immigration officer.*" 8 U.S.C. § 1225(a)(1); 8 U.S.C. § 1101(a)(13)(A) (emphasis added). So the definition of "applicants for admission" can be read as noncitizens who have not "lawful[ly entered] into the United States after inspection and authorization by an immigration officer." This definition requires applicants for admission to have undergone inspection and authorization by an immigration officer. It does not fit Respondent's definition of "applicants for admission," which includes noncitizens who have been residing in the interior of the country for a long time without inspection or authorization by an immigration officer.

The titles of the provisions here suggest that Petitioner's interpretation of the statutory framework is correct. *See Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, 2025 WL 3047889, at *4 (W.D. Tenn. Oct. 31, 2025). "[T]he title of a statute in the heading of a section are tools available for the resolution of a doubt" about the statute's meaning. *Dubin v. United States*, 599 U.S. 110, 121 (2023). The title of § 1225 is "Inspection by immigration officers;

11

expedited removal of inadmissible arriving aliens; referral for hearing," and the title of § 1226 is "Apprehension and detention of aliens."  8 U.S.C. §§ 1225–26.  Section 1225's title envisions *arriving* aliens placed in *expedited removal*, but Petitioner was detained about 1,000 miles from the border over a year after he had crossed it.  (ECF No. 12 at PageID 79–80.)  The title of § 1225 therefore seems inapplicable to noncitizens in Petitioner's shoes, but the title of § 1226 seems spot on.  Petitioner is a noncitizen who was apprehended and detained.

A look at the subject matter of § 1225 further undercuts Respondent's interpretation of the statutory framework.  Section 1225 describes the process of inspecting and removing immigrants who are actively crossing the border or entering at a port of entry.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."); 8 U.S.C. § 1225(b)(2)(A).  It explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ."  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  It makes little sense to apply § 1225 to Petitioner who has resided in the United States for over a year and is not actively entering the country.

Respondent also ignores several words and phrases within § 1225(b)(2)(A) in its interpretation of the provision.  *See Godinez-Lopez v. Ladwig et al.* No. 2:25- CV-02962, 2025 WL 3047889, at *4–5 (W.D. Tenn. Oct. 31, 2025).  "If possible, every word and every provision is to be given effect."  Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  Section 1225(b)(2)(A) states, "[I]n the case of an alien who is an applicant for admission, if the *examining immigration officer* determines that an alien *seeking*

12

admission is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As Petitioner points out, he was not seeking admission at the time of his apprehension. (*See* ECF No. 12 at PageID 72.) Also an examining immigration officer did not decide about whether he was "not clearly and beyond a doubt entitled to be admitted." (*See id*.) The Court agrees with Petitioner that the language of § 1225(b)(2)(A) points to noncitizen arriving at the border or port of entry and a candidate for expedited removal. (*Id.* at PageID 74.) That said, it does not coherently apply to a noncitizen detained far from the border over a year after entry. (*Id.* at PageID 79–80.)

  Respondent would have the Court interpret all noncitizens who entered the country unlawfully to be "seeking admission," no matter how or when ICE arrested them or how long they lived in the United States. (*See* ECF No. 11 at PageID 39.) He ignores the language of § 1225(b)(2)(A) which suggests active conduct by the noncitizen. That statute is written using the progressive verb tense. So under § 1225(b)(2)(A), to be mandatorily detained, the noncitizen must be "seeking admission," not simply residing in the country after entering it unlawfully. The Court finds that this language suggests action and that to fall under § 1225(b)(2)(A), the noncitizen must be *actively* seeking admission. The Court's reading differs from Respondent by recognizing the class of noncitizens that did not lawfully enter the United States—subject to removal proceedings as a result—but who are nonetheless not seeking admission. That the INA provides two examples of noncitizens who are not seeking admission does not preclude the existence of more classes of noncitizens that do not fall under § 1225. (*See id.* at PageID 38–39.)

13

### b. Interpretation of the Statutory Framework

The existence of § 1226(c) also undercuts the Respondent's position here because Respondent's interpretation of the INA makes § 1226(c) superfluous. *See Godinez-Lopez v. Ladwig et al.*, No. 2:25- cv-02962, at *5 (W.D. Tenn. Oct. 31, 2025). "In Section 1226(c), the INA describes people who would otherwise be eligible for bond under Section 1226(a), but are rendered ineligible for bond because of their criminal histories." *Monge-Nunez v. Ladwig*, No. 2:25-cv-03043-TLP-atc, 2025 WL 3565348, at *6 (W.D. Tenn. Dec. 12, 2025) (internal quotations omitted). Subsections 1226(c)(1)(E)(i)–(ii) provide for mandatory detention of certain noncitizens. But they apply only to those noncitizens who both entered the country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) and are also "charged with, . . . arrested for, . . . convicted of . . ." certain crimes. 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). And thus, to read § 1225(b)(2)(A) to make every noncitizen that did not lawfully enter the country subject to mandatory detention (as Respondent argues) would strip 1226(c) of meaning. Further, Congress only recently added subsection 1226(c)(1)(E) to § 1226 with the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025). Respondent's interpretation also asks this Court to presume Congress pointlessly amended the statute with a redundant provision when it most recently considered it. *See Lopez-Campos Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8 (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)). The Court declines to do so.

The plain meaning of § 1226 better captures Petitioner's situation. It applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Petitioner was apprehended in the

14

interior of the country after residing here for over a year. Thus the Attorney General has the discretion under this section to "continue to detain [him]" or she "may release [him] on bond." (*Id.*) She may not, though, deny him the bond hearing to which he is entitled. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1).

Given the plain text of the INA and its recent amendment with the Laken Riley Act, the Court finds § 1226 governs the arrest and detention of a noncitizen without an apparent criminal history who has been residing in the United States for over a year. Petitioner is therefore subject to the discretionary bond process under § 1226 and entitled to a bond hearing.

## III.    Due Process

The Fifth Amendment of the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." *Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). "In the context of civil immigration detention, the Sixth Circuit applies the balancing test from *Mathews v. Eldrige*, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen." *Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, at *6 (W.D. Tenn. Oct. 31, 2025) (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)). Under the *Matthews* test, this Court considers (1) "the private interest that will be affected by the official action." (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mattews v. Eldridge*, 424 U.S. 319, 335 (1976).

15

Because § 1226(a) applies to Petitioner, he is entitled to the process owed to him under that provision.  Upon weighing the *Matthews* factors, Petitioner has a strong liberty interest, the absence of any bond hearing creates a high risk of erroneous deprivation of his liberty right, and given Petitioner's longstanding residence and family in the United States, the Government's interest in denying him a bond hearing is diminished.  The Court finds that the Government's interest in fewer bond hearings (the efficient processing on noncitizens for removal) does not outweigh Petitioner's interest or the risk of erroneous deprivation.  "The recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests." *Lopez-Campos*, 2025 WL 2496379, at *10.

Consequently, Petitioner's detention without a bond hearing violated his liberty interest.  Petitioner is entitled to a bond hearing before an immigration judge.  The Court therefore **GRANTS** the Petition.

IV.     **Fourth Amendment**

Combined, the Parties spend a little more than a page of their nine briefs addressing Petitioner's Fourth Amendment claim.  (*See* ECF Nos. 11–12.)  Petitioner cites two cases to support his contention that his detention violates the Fourth Amendment, and Respondent cites no case in response.  (ECF No. 12 at PageID 82.)  Since the Court agrees with Petitioner's arguments that Respondent has detained him under the wrong provision of the INA and that his detention without a bond hearing violates his procedural due process rights, the Court need not address the sparsely argued Fourth Amendment claim.  The Court therefore declines to

16

determine whether Petitioner's detention violates the Fourth Amendment. Petitioner's other claims are an adequate basis for the remedy the Court will provide below.[3]

## V.      Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. (ECF No. 1 at PageID 17.) Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(b). Federal Rule of Civil Procedure 54 requires that claims for attorney's fees and related expenses be made by motion. Fed. R. Civ. P. 54(d)(2)(A). Petitioner must therefore move under Local Rule 54.1(b) to seek attorney's fees and costs. *See* Loc. R. 54.1(b).

## CONCLUSION

For the reasons above, the Petition is **GRANTED**. Respondent is **ORDERED** to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) and 8 C.F.R. § 1236.1(c)(8), (d)(1) within fourteen days of the entry of this Order and to release Petitioner pending the bond hearing. Respondent is further **ENJOINED** from pursuing Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A).

---

[3] The Parties also devote three briefs to arguing over whether Petitioner is a member of the class in *Maldonado* and whether the order granting partial summary judgment in *Maldonado* has preclusive effect in this case. (*See* ECF Nos. 17, 20–21.) Since the Court is finding for Plaintiff on the merits of his individual claim, it is unnecessary to determine whether he is part of the class in *Maldonado* and whether that entitles him to enforce the injunction in that case. The Parties each devote two briefs to arguing over whether Petitioner has violated the ATD program. (*See* ECF Nos. 23–26.) The Court agrees with Petitioner that this question is irrelevant to whether his detention is governed by 1225(b)(2)(A) or 1226(a), and therefore declines to rule or make any findings of fact on that issue.

**SO ORDERED**, this 15th day of December, 2025.

                                         s/Thomas L. Parker
                                         THOMAS L. PARKER
                                         UNITED STATES DISTRICT JUDGE